IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alex Ingrassia,                                    :
                              Petitioner           :
                                                   :
              v.                                   :    No. 1212 C.D. 2014
                                                   :    Submitted: June 26, 2015
Workers' Compensation Appeal                       :
Board (Universal Health Services,                  :
Inc.),                                             :
                              Respondent           :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION
BY JUDGE LEAVITT                                        FILED: October 26, 2015

          Alex Ingrassia (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of his claim for disability benefits. In doing so, the Board determined that Claimant failed to prove by credited medical evidence that his work injury, which his employer had acknowledged by a medical only notice of compensation payable, caused any loss of earning power. For the reasons that follow, we affirm in part, vacate in part and remand for further findings.

          Claimant was employed by Universal Health Services, Inc. (Employer) as a full-time transportation van driver, shuttling children to and from appointments. On June 16, 2011, the van, while sitting at a red light, was rear-ended by another vehicle. That day, Claimant sought medical treatment with Employer's panel doctor, who cleared him for work. Employer issued a medical

only notice of compensation payable (NCP) that described the injury as a strain/sprain of the neck and lumbar areas and accepted liability for medical treatment.[1] The next day, Claimant reported for work but left early, citing a headache and dizziness. He has not returned to his job with Employer.

On August 22, 2011, Claimant filed a claim petition alleging that in addition to suffering a neck and back injury, he also injured his head and left arm in the accident. The petition also alleged that claimant was totally disabled as of June 17, 2011.[2] Employer denied the allegations.

The petition was assigned to a WCJ. Both Claimant and Employer appeared and presented evidence. Claimant orally amended his claim petition to be a reinstatement petition, asserting that this was appropriate because Employer had already recognized a work injury.

At a hearing on September 22, 2011, Claimant testified. He explained that he had worked for Employer for three years before the automobile accident. A panel doctor, Dr. Schreiber, gave Claimant a note to return to full duty. Claimant did so but his headache, dizziness and nausea made it impossible. Claimant then went to see a panel chiropractor, Dr. Anderson, who gave him a note taking him out of work. However, when Claimant saw Dr. Schreiber a week later, Dr. Schreiber decided that Claimant could work without restrictions.

---

[1] Employer originally filed a medical only notice of temporary compensation payable, which later converted to a medical only NCP by operation of law.

[2] Claimant also filed a penalty petition alleging that Employer acted improperly by issuing a medical only NCP and not paying Claimant disability benefits even though he immediately missed work due to his injuries. For its part, Employer filed a termination petition alleging that Claimant had fully recovered from his work injury as of September 1, 2011. The WCJ denied both petitions. Neither party appealed that portion of the WCJ's decision and, therefore, those petitions are not currently at issue.

Claimant testified that the initial stiffness and headaches resolved but he then began to experience numbness in his left arm, especially in his elbow, wrist and ring and pinky fingers. On June 28, 2011, Claimant went to the hospital emergency room because of headaches and left arm numbness. Claimant then went to a different panel provider, Dr. Wiggins, who gave Claimant a note taking him out of work and ordered physical therapy. It did not help. Claimant testified that he continues to have left arm and hand pain and numbness, as well as headaches and neck pain. However, Claimant no longer has low back problems. Claimant testified that he could not return to his regular job because driving aggravated his symptoms to the point that he had difficulty holding the steering wheel. Claimant acknowledged that he drove to the hearing, which was a ten-minute trip.

Claimant presented the deposition testimony of Lynn W. Yang, M.D., who is board certified in physical medicine and rehabilitation. Dr. Yang saw Claimant on two occasions, March 8, 2012, and April 26, 2012, at the request of his attorney.[3] Claimant told Dr. Yang that the accident immediately caused neck and back pain, headaches and dizziness. He also reported that numbness in his left elbow, shoulder and fingers began several days later. Although improved, these symptoms persist. Dr. Yang reported that Claimant informed her that driving aggravated his symptoms, so he uses only his right arm to drive.

An EMG and nerve conduction test showed a moderate to severe ulnar neuropathy at the left elbow. Although Claimant has a full range of motion of his left arm, he has decreased sensation in his fingers and palm. Taps to

---

[3] Dr. Yang described these as independent medical examinations and explained that she does not consider Claimant to be her patient.

Claimant's ulnar nerve confirmed the EMG results. Dr. Yang diagnosed Claimant with a left ulnar neuropathy at the elbow with persistent numbness, and, by history, cervical and lumbar strain and sprain. Dr. Yang attributed these diagnoses to the work incident because Claimant's symptoms began at that time or shortly thereafter.

With respect to disability, Dr. Yang acknowledged that she had no firsthand knowledge about Claimant's condition before March 8, 2012. She had to rely on Claimant's statements and his medical records. Dr. Yang observed that some doctors, such as Drs. Anderson and Wiggins, believed Claimant had been disabled from performing his job while other doctors, such as Dr. Schreiber, believed Claimant could have returned to work. Dr. Yang opined that Claimant could not have done his job as of the date of the accident because of his dizziness and neck and back pain and the subsequent left arm numbness. Dr. Yang opined that Claimant could not do his regular job at the time she saw him because driving made his numbness worse, and it was not safe for him to transport passengers in that circumstance. Dr. Yang thought Claimant could do a job that did not require him to use his left arm.

Employer submitted the deposition testimony of Richard I. Katz, M.D., a board certified neurologist who performed an independent medical examination of Claimant on September 1, 2011. Claimant told Dr. Katz that the accident caused headaches and neck pain, but Dr. Katz noted that the medical records did not document a head injury. Claimant also told Dr. Katz that a few days after the accident, he noticed left arm and finger numbness. Dr. Katz's physical examination of Claimant was normal except for some objective findings

4

involving the fingers. Dr. Katz testified that Claimant's work injury was a cervical and lumbar strain, which had resolved, and that this work injury was not disabling.

Based on the physical examination and EMG results, Dr. Katz diagnosed Claimant with a mild left elbow ulnar neuropathy. Dr. Katz did not believe the condition was work-related because Claimant did not strike his arm or elbow in the accident and did not report symptoms for several days. Dr. Katz opined that Claimant's ulnar neuropathy was attributable to his hobbies of guitar playing and bicycling.

Employer presented the testimony of Robert Weinhold, Employer's chief executive officer. Weinhold testified that he had seen Claimant playing guitar with his church band in Doylestown prior to his work injury. Weinhold again saw Claimant with his band on a float in the Doylestown Memorial Day parade in May 2012. Weinhold testified that he was surprised to see Claimant "playing his guitar vigorously," given that he was out of work. Weinhold dep. at 7.[4]

Employer also presented the testimony of private investigator John Murphy. Murphy testified that on July 4, 2012, he observed Claimant playing guitar on a parade float for approximately two hours.

At a WCJ hearing on September 10, 2012, Claimant testified in rebuttal to Employer's evidence. Claimant explained that his left arm and hand symptoms had improved in December 2011 and again in March 2012, and he so informed Dr. Yang. Claimant testified that he had largely stopped driving his personal vehicle after the accident, with the exception of attending the September

---

[4] Because Claimant's reproduced record contains only selected pages from the various hearing transcripts and depositions, we cite to the certified record.

5

2011 hearing. He resumed driving in December 2011. He had also stopped playing guitar but resumed on a limited basis in March 2012. Claimant acknowledged playing his guitar in the Memorial Day and Fourth of July parades, explaining that he chose songs that did not require him to use his left pinky finger because using that finger triggers pain and numbness in the elbow and arm.

Claimant testified that he had started a new job driving a customer shuttle van for a car dealership in late June 2012. It was different from his pre-injury job because it was part-time, did not require long trips and did not require Claimant to be responsible for children. When asked whether he was capable of returning to his pre-injury job with Employer, Claimant responded that because he had resumed driving in December 2011, "I would say I could, sure," but he found his new job easier to do. Notes of Testimony, September 10, 2012, at 26.

The WCJ accepted Claimant's testimony as credible except for any suggestion that his pre-injury job was too difficult as of July 2012.[5] The WCJ credited the testimony of Weinhold and Murphy and found that Claimant's guitar playing involved the active use of both hands. The WCJ credited Dr. Yang's opinion that Claimant's work injury includes a left ulnar neuropathy over the contrary opinion of Dr. Katz. However, the WCJ rejected Dr. Yang's opinion that Claimant was disabled as of March 2012 because she was unaware of Claimant's guitar playing and driving. As for Claimant's condition before seeing Dr. Yang, the WCJ noted that Claimant did not present "testimony from any physician who

---

[5] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

treated him during the many months immediately following the work injury" in order to establish that he was disabled. WCJ Decision, November 30, 2012, at 4; Finding of Fact No. 10. The WCJ credited Dr. Katz's opinion that Claimant could drive, noting that it was consistent with the medical records of Claimant's initial treatments.

Based on these findings, the WCJ concluded that Claimant proved that his work injury includes left ulnar neuropathy. Accordingly, the WCJ ordered the NCP so amended. However, the WCJ concluded that Claimant failed to offer credible medical evidence that his work injury disabled him from performing his pre-injury job.

Claimant appealed the denial of disability benefits, and the Board affirmed. The Board concluded that Dr. Yang's opinion that Claimant was disabled as of the date of his injury was speculative because she lacked a factual basis for that opinion. The Board also denied Claimant's request for a remand to allow him to submit medical records from his treating physicians. Claimant then petitioned for this Court's review.[6]

---

[6] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). In addition, review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard of the evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007).

7

On appeal, Claimant argues that it was error to deny him disability benefits because the WCJ and the Board applied the wrong burden of proof.[7] Claimant also asserts that the WCJ failed to issue a reasoned decision and capriciously disregarded unrebutted medical evidence that Claimant was disabled by his work injury, which includes ulnar neuropathy.[8]

We first address Claimant's argument regarding burden of proof. Claimant argues that because Employer issued a medical only NCP, his benefits should be treated as though they are in a suspension status. Accordingly, his burden of proof was that applicable in a reinstatement petition, *i.e.*, where a claimant's testimony alone can support a reinstatement. The burden then shifts to the employer to prove that the disability is unrelated to the work injury. Claimant asserts that because he was found credible by the WCJ, he met his burden for a reinstatement. Employer, however, did not meet its burden because Dr. Katz did not opine about whether Claimant's ulnar neuropathy was disabling.

In workers' compensation, the term "disability" means a loss of earning power. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 854 (Pa. 2000). A claimant is entitled to workers' compensation disability benefits where the work injury results in a loss of earning power. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 640 A.2d 386, 391 (Pa. 1994); *School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). A suspension of disability benefits is appropriate where the work injury no longer

---

[7] We have rearranged the order of Claimant's arguments for organizational purposes.

[8] Employer did not file a brief.

impairs the claimant's earning power. *Howze v. Workers' Compensation Appeal Board (General Electric Company)*, 714 A.2d 1140, 1142 (Pa. Cmwlth. 1998).

Section 413(a) of the Workers' Compensation Act[9] (Act) authorizes the reinstatement of disability benefits "upon proof that the disability of an injured employe has increased, decreased, [or] recurred[.]" 77 P.S. §772. In a reinstatement, the claimant has the burden of proving that: (1) his earning power is once again adversely affected by his disability and; (2) the disability is a continuation of the disability that arose from his original claim. *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010). The claimant can satisfy the burden by credibly testifying that he continues to experience the effects of the prior work injury. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1085 (Pa. 1994). On the other hand, if the claimant has not established a loss of earning capacity resulting from the work injury, the case has not "advanced procedurally or in substance to the suspension/reinstatement stage." *Klarich v. Workers' Compensation Appeal Board (RAC's Association)*, 819 A.2d 626, 629 (Pa. Cmwlth. 2003).[10]

---

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

[10] In *Klarich*, the claimant injured his back and received medical treatment but continued to work. Apparently, his employer did not issue any Bureau documents. Upon being laid off, the claimant filed a claim petition which was granted for medical bills but not for wage loss benefits because there was no established loss of earning capacity; the claimant performed the duties of his pre-injury job until being laid off for economic reasons. Because there was never any loss of earning capacity, this Court rejected the claimant's argument that his case should be treated as a request for reinstatement. Although *Klarich* did not involve a medical only NCP, we nevertheless find its rationale instructive.

9

The employer has the option of issuing a medical only NCP, by which it acknowledges a work injury and agrees to pay for medical expenses but does not accept liability for or agree to pay any wage loss benefits for disability.[11] *Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 831-32 (Pa. Cmwlth. 2007).

A claimant who believes that a work injury is causing a loss of earning power must file a claim petition. *Orenich v. Workers' Compensation Appeal Board (Geisinger Wyoming Valley Medical Center)*, 863 A.2d 165, 170 (Pa. Cmwlth. 2004). In a claim petition, the claimant must prove all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove that he sustained a work injury which resulted in disability, *i.e.*, a loss of earning power. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993). Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection. *Mensah v. Workers' Compensation Appeal Board (Norrell Temp Agency)*, 716 A.2d 707, 709 (Pa. Cmwlth. 1998).[12]

---

[11] In 2004, the Bureau of Workers' Compensation created the notice of compensation payable form allowing employers to accept liability only for medical bills. This eventually phased out the prior practice of issuing a notice of compensation denial stating that although an injury had occurred, there was no resulting disability.

[12] Claimant does not argue that the connection between his work injury and alleged disability is obvious. Further, we agree with the Board that given Claimant's immediate release to full duty work by the panel physician and the delay in the development of ulnar neuropathy symptoms, the connection is not obvious. Accordingly, medical evidence is required.

Here, Employer issued a medical only NCP, acknowledging that Claimant had sustained a non-disabling neck and lumbar strain/sprain work injury. This made Employer responsible for paying medical expenses for that injury, but nothing more. Because Claimant did not establish a loss of earning capacity resulting from the work injury accepted by Employer, there were no disability benefits to suspend or to reinstate. In short, Claimant's case has not "advanced procedurally or in substance to the suspension/reinstatement stage." *Klarich*, 819 A.2d at 629. Claimant properly filed a claim petition and, thus, he had the burden of proving a disabling work injury by competent medical evidence. The WCJ and the Board applied the correct burden of proof.[13]

Claimant next argues that in denying disability benefits, the WCJ capriciously disregarded medical evidence of his disability and failed to resolve critical conflicts in the evidence, resulting in a decision that is not reasoned. We agree.

Section 422(a) of the Act requires the WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834.[14] The WCJ must give reasons for accepting or rejecting

---

[13] Claimant also argues that because Employer filed a termination petition, Employer had the burden to prove that Claimant was not disabled by his work injury. In a termination proceeding, the employer bears the burden of proving that the claimant fully recovered from his work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). This rationale is inapplicable because there was no established disability. Employer accepted liability only for a non-disabling injury.

[14] Section 422(a) states in relevant part:

**(Footnote continued on the next page . . .)**

11

evidence. *Id*. This is to ensure that "a legally erroneous basis for a finding will not lie undiscovered" but, rather, "such legal error will be evident and can be corrected on appeal." *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088-89 (Pa. Cmwlth. 1998). The WCJ also has a duty to "make crucial findings of fact on all essential issues necessary for review by the Board and this Court." *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993). A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review without further elucidation. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

In deciding a claim petition, the WCJ is free to determine the chronological length of the disability. *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716, 719 (Pa. Cmwlth. 1997).[15] The WCJ's findings of fact relevant to the issue of Claimant's disability follow:

---

**(continued . . .)**

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

[15] If seeking ongoing wage loss benefits, the claimant must prove that the disability continues throughout the pendency of the claim petition proceeding. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

3.    The claimant testified at the hearing of September 22, 2011.  His testimony is summarized as follows:

***

    i)    Although [Claimant] is a guitar player, he was not able to do so without pain and *he cannot do his pre-injury job because of the pain and the problems with his arm*.

    j)    Although he could not do the driving required of work, he was able to drive himself to the hearing, a trip of about ten minutes.

    k)    *The claimant's testimony at the hearing of September 22, 2011 is credible*.

***

5.    … *Dr. Yang opined that the claimant was not able to do his regular job as a driver and that he had been incapable of doing so ever since the time of the injury*.  Although she found the claimant capable of employment, she thought he could not do any job requiring the use of his left arm.   Dr. Yang demonstrated no awareness that the claimant had been driving for months, nor did she display any awareness that the claimant had been playing a guitar [as of March 2012].

***

9.    The claimant testified again…on September 10, 2012 … almost a year after his initial testimony. … *The claimant's testimony is generally credible; however, to the extent that he opines that he is not capable of performing his time-of-injury job as of July 2012, his testimony is unpersuasive* in consideration of:   his admission that he has been driving without concern for his own safety since December of 2011, his testimony in September of 2011 that he was driving himself and in recognition of his guitar playing activities, which however different they may be from his previous style, clearly involve the active use of both hands.

13

10. To the extent the medical experts disagree, the opinion of Dr. Yang that the work injury includes a left ulnar neuropathy is credible and is accepted as fact. ... However, *Dr. Yang's opinion that the claimant is disabled from his pre-injury employment as of her examination of the claimant in March of 2012 is not credible* because Dr. Yang was apparently unaware that the claimant had been driving for months, was improving, and was playing the guitar. We further note that the *claimant provided no testimony from any physician who treated him* during the many months immediately following the work injury. *The opinion of Dr. Katz that the claimant was not disabled from driving is credible and consistent with the records of the physicians who saw the claimant initially*.

WCJ Decision, November 30, 2012, at 1, 2, 4; Findings of Fact No. 3, 5, 9, 10 (emphasis added). Based on those findings, the WCJ concluded that Claimant "has failed to offer expert medical evidence, herein found credible, that he was disabled from his pre-injury employment by the work injury." WCJ Decision, November 30, 2012, at 5; Conclusion of Law No. 4.

Claimant cites several shortcomings in this decision. First, the WCJ found Dr. Katz's opinion that Claimant was not disabled from his job to be consistent with the conclusions of Claimant's treating physicians; however, Claimant notes that Claimant's treating physicians were not unanimous that Claimant was able to work. Second, the WCJ disregarded Dr. Yang's competent medical opinion that Claimant was disabled by his work injury as of the date of injury and, instead, limited the date of her disability opinion to March 2012. Third, the WCJ did not explain why he did not award any disability benefits after crediting Claimant's testimony that he could not perform his pre-injury job as of September 2011. Because the WCJ found that Claimant's work injury included ulnar neuropathy, Dr. Katz's opinion that Claimant was not disabled was not

14

competent because he only addressed Claimant's neck and back sprain. Dr. Katz did not believe that Claimant's ulnar neuropathy was work related and, thus, did not opine on whether the ulnar neuropathy was disabling.

On the other hand, Dr. Yang did address Claimant's ulnar neuropathy and why it was disabling. Both Claimant and Dr. Yang were found credible, and their testimony was uncontroverted. Accordingly, the WCJ could have awarded disability benefits at least until July 2012.

We agree with Claimant's criticisms and conclude that the WCJ's decision was not sufficiently reasoned to allow meaningful appellate review. This requires a remand. On remand, the WCJ must address all the relevant evidence.

The WCJ credited Claimant's testimony at the September 2011 hearing that he was not capable of performing his pre-injury job because of his left arm problems. The WCJ rejected Claimant's testimony at the September 2012 hearing, insofar as it could be construed to mean Claimant could not perform his pre-injury job as of July 2012. These two findings of the WCJ seem to support some period of disability.

Dr. Yang opined that Claimant was disabled by his work injury as of the date of injury and ongoing. Without explanation, the WCJ found that her opinion established a disability as of March 2012. The Board tried to address this problem by suggesting that Dr. Yang did not see Claimant until March 2012 and, thus, had no factual basis for her opinion. However, Dr. Yang testified that she reviewed the testimony of Claimant and Dr. Katz, radiographic test results and medical records including reports from, *inter alia*, Dr. Anderson and Dr. Wiggins. She also testified that she relies on these types of medical records to help formulate her opinion. Dr. Yang dep. at 16. Dr. Yang opined that, based on her review of

15

the medical records, Claimant was disabled as of June 16, 2011, when the accident occurred.[16]

Dr. Yang's lack of personal knowledge of Claimant's condition prior to seeing him in March 2012 is not fatal to her medical opinion. A medical expert is permitted to base her opinion on the medical reports of other doctors, which the expert customarily relies upon in the practice of her profession. *Commonwealth v. Thomas*, 282 A.2d 693, 698-99 (Pa. 1971). That is what Dr. Yang did. Dr. Yang's testimony, coupled with Claimant's credible testimony, could support an award for some period of disability benefits.[17] The WCJ must make further findings on the issue of disability and explain his reasons for either accepting or rejecting Claimant's evidence.[18]

---

[16] Dr. Yang testified regarding Claimant's disability as follows:

> Q. Why don't you believe he's been able to do his regular job since June 16[th], 2011?
>
> A. Well, his regular job is to drive a transport van. So initially, he had the neck pain, the back pain, the dizziness; I certainly wouldn't want him driving with dizziness.
>
> And a few days after that, he started having numbness in his arm, which got worse whenever he bends it. Certainly, your arm is in a bent position to drive. He is not, you know, driving – he's driving people, passengers, so if he's going to have worsened symptoms driving, I think for the safety of himself, as well as his passengers, that he should not drive.

Dr. Yang dep. at 21-22.

[17] *Cf. Albert Einstein Healthcare v. Workers' Compensation Appeal Board (Stanford)*, 955 A.2d 478, 482-84 (Pa. Cmwlth. 2008) (disability benefits properly awarded beginning when claimant's medical expert first saw her 14 months after injury because expert opined only that claimant was disabled while in his care and did not testify that he reviewed medical records or offer an opinion that she was disabled by the work injury prior to that time).

[18] We note that a WCJ is permitted to reject even uncontroverted evidence presented by the party bearing the burden of proof, but he must make a specific finding and articulate a reasonable explanation for doing so. *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Annette Pilvalis)*, 597 A.2d 294, 296-97 (Pa. Cmwlth. 1991).

Accordingly, the portion of the Board's adjudication affirming the WCJ's denial of disability benefits is vacated, and the matter is remanded to the Board with instructions to remand to the WCJ to render further findings of fact and conclusions of law on the issue of disability.[19]

_____
MARY HANNAH LEAVITT, Judge

---

[19] Claimant requests that, in the event this Court does not grant him his requested relief, this matter be remanded and the record reopened to allow him to submit additional medical evidence. In support, Claimant argues that the WCJ drew an improper adverse inference from the absence of testimony from Claimant's treating physicians and seemed not to understand that the early medical opinions on disability were mixed. There is no need for additional medical evidence. This Court has granted Claimant his requested relief of a remand for a reasoned decision and explained that the testimony of Dr. Yang, upon which Claimant chose to rely in support of his burden of proof, is competent. Dr. Yang testified to the records she reviewed. The WCJ shall decide the issue of disability based upon the medical evidence that currently exists in the record.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alex Ingrassia,                                  :
                        Petitioner          :
                                                 :
            v.                                   :     No. 1212 C.D. 2014
                                                 :
Workers' Compensation Appeal            :
Board (Universal Health Services,       :
Inc.),                                           :
                        Respondent          :

# **O R D E R**

AND NOW, this 26th day of October, 2015, the order of the Workers' Compensation Appeal Board dated June 19, 2014, in the above-captioned matter is hereby VACATED in part with respect to the denial of disability benefits and AFFIRMED in all other respects, and the matter is REMANDED for purposes consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, Judge